# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **TEMPLE TYRELL ROBINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 16-0376-WS-B** |
| | ) |
| **OFFICER BRASSEL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 13). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 14, 21-23), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

The defendants are the City of Camden ("the City") and three police officers (Brassel, Powell and McGraw) employed by the City. According to the complaint, (Doc. 1-1), on May 17, 2014, Officers Brassel and McGraw arrested the plaintiff, handcuffed him, then placed him in the back of a patrol car. The plaintiff retrieved his cell phone from a pocket, called his mother, and asked Officer McGraw to speak with her. Officer McGraw agreed and permitted the plaintiff to exit the patrol car, at which point Officer Powell grabbed the cell phone from the plaintiff, broke it in two, placed the plaintiff in a chokehold, and tased him. Officers Brassel and McGraw also tased him. At no time was the plaintiff resisting arrest, attempting to flee or threatening violence, and he was at all times handcuffed.

Counts 1, 3 and 5 are brought against the officers under Section 1983 for violation of the plaintiff's Fourth Amendment rights.[1]  Counts 2, 4 and 6 allege state-law assault and battery against the officers.  Count 7 asserts a Section 1983 claim against the City based on its policies and customs of deliberate indifference to the plaintiff's constitutional rights, while Count 8 asserts a state-law claim against the City for negligent and/or wanton training and supervision.[2]  The defendants seek summary judgment as to all counts.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not

---

[1] While the complaint also mentions the Fifth, Eighth and Fourteenth Amendments, the plaintiff "concedes that he does not have any … claims" under these amendments.  (Doc. 21 at 2).

[2] The caption of Count 8 describes it as encompassing retention.  The body of Count 8, however, limits its scope to training and supervision.  (Doc. 1-1 at 7-8).

controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).  The Court accordingly limits its review to those arguments the parties have expressly advanced.

## I.  Federal Claims.

### A.  Officers.

The complaint alleges that the officers engaged in an unconstitutionally unreasonable search and seizure of the plaintiff and that they employed unconstitutionally excessive force against him.  (Doc. 1-1 at 5-6).

#### 1.  Search and seizure.[4]

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …."  *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

[4] The defendants assert that the plaintiff "abandoned" this claim by failing to address it in his responsive brief.  (Doc. 23 at 4).  The Court has rejected such arguments as inconsistent with published Eleventh Circuit precedent.  *E.g., Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1222 (S.D. Ala. 2014); *cf. Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013) (applying same rule to motions to dismiss).  Nothing in the defendants' presentation persuades the Court to alter its conclusion.

Viewing the evidence in the light most favorable to the plaintiff, Officers McGraw and Brassel were inside a general store when the plaintiff entered and purchased a drink.  As the plaintiff exited the store, a drug dealer from whom the plaintiff had previously purchased marijuana was nearing the entrance.  As the plaintiff approached the dealer to purchase marijuana, the dealer pushed him.  The officers saw the plaintiff preparing to retaliate and intervened, with each officer pulling a participant away from the other.

Officer McGraw held the plaintiff, who moved towards his vehicle while still jawing at the drug dealer.  Officer Brassel instructed the other participant to leave the premises, then joined Officer McGraw.  When they neared the plaintiff's vehicle, the officers saw a leafy green substance in a clear plastic bag sitting on the front seat of the plaintiff's car.  The plaintiff was thereupon arrested and handcuffed for possession of marijuana (or possibly spice).

"An arrest is a seizure, and we assess the reasonableness of an arrest by the presence of probable cause for the arrest." *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016).  That is, "[a]n arrest without probable cause violates the Fourth Amendment." *Brown v. City of Huntsville*, 608 F.3d 724, 734 n.15 (11th Cir. 2010).  "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Carter*, 821 F.3d at 1319 (internal quotes omitted).  Thus, "[w]hether an officer possesses probable cause … depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735.

"A person commits the crime of unlawful possession of marihuana in the second degree if, except as otherwise authorized, he possesses marihuana for his personal use only." Ala. Code § 13A-12-214(a).  The question is whether, under the facts and circumstances known to the arresting officers, a prudent person would believe that the plaintiff possessed marijuana for personal use.

Marijuana is a green, leafy substance.[5]  Marijuana is commonly packaged in clear plastic bags.[6]  The plaintiff smelled of marijuana.  (Doc. 14-3 at 6-7). Officer Brassel knew that the plaintiff had a reputation in town and among law enforcement officers for involvement with drugs.  (*Id*. at 4).  Under these circumstances, there was probable cause to believe the substance in the plastic bag was marijuana.

"In order to establish the element of possession, the State must show … (1) actual or potential control, (2) intention to exercise dominion, and (3) external manifestation of intent."  *Boyington v. State*, 748 So. 2d 897, 901-02 (Ala. Crim. App. 1999) (internal quotes omitted).  The marijuana was located in plain view on the front seat of the plaintiff's vehicle, and the plaintiff was moving towards his vehicle when the officers discovered it.  Under these circumstances, there was probable cause to believe the plaintiff possessed the marijuana.

The plaintiff possessed a single plastic bag of marijuana, and he smelled of marijuana.  Under these circumstances, there was probable cause to believe the plaintiff possessed the marijuana for personal use.

The officers thus had probable cause to arrest the plaintiff, defeating any Fourth Amendment claim based on the absence of such probable cause.  The plaintiff does not assert that the officers violated his Fourth Amendment rights by observing the plastic bag in his car or by basing probable cause on what they observed.[7]  In any event, the officers clearly they did not violate the plaintiff's Fourth Amendment rights by seeing inside his vehicle or relying on what they saw.  "The plain view doctrine applies to articles which can be seen through the

---

[5] *E.g., United States v. Pineiro*, 389 F.3d 1359, 1367 (11th Cir. 2004).

[6] *E.g., United States v. Swan*, ___ Fed. Appx. ___, 2017 WL 104456 at *3 (11th Cir. 2017); *United States v. Hodges*, 616 Fed. Appx. 961, 969 (11th Cir. 2015).

[7] The complaint expressly limits any claim by the plaintiff regarding an unreasonable search to an unreasonable search "of his person."  (Doc. 1-1 at 5).  The plaintiff identifies no such search.

door or window of an automobile." *United States v. McDaniel*, 550 F.2d 214, 218 (5th Cir. 1977).

Because the officers possessed probable cause to arrest the plaintiff, his arrest did not violate the Fourth Amendment. Accordingly, the officers are entitled to summary judgment as to this claim.

### 2. Excessive force.

Viewing the evidence in the light most favorable to the plaintiff, the officers effected the plaintiff's arrest by handcuffing him behind his back and advising him he was under arrest. As he was being placed in a patrol car, the plaintiff asked that he be handcuffed with his hands in front; Officer McGraw agreed and did so. The plaintiff entered the patrol car and the doors were shut on him. The plaintiff remained compliant and non-resisting throughout this process. The plaintiff then retrieved a cell phone from his pocket and called his mother, who asked to speak with Officer McGraw. The plaintiff told Officer McGraw this and asked if he could step out of the patrol car while Officer McGraw spoke with his mother. Officer McGraw said "Sure," opened the car door, let the plaintiff out, and told him to just stand right there. The plaintiff remained compliant and non-resisting throughout this process. (Doc. 14-1 at 4-6).

By this time, Officer Powell had arrived on the scene. As the plaintiff exited the vehicle and got ready to hand Officer McGraw his phone, Officer Powell grabbed the phone, broke it, pushed the plaintiff against the patrol car, and placed the plaintiff in a chokehold with one hand while tasing the plaintiff in the side with his other hand. The plaintiff in response "threw [his] hands up" and said, "[Y]'all see this? This police brutality." Officer Powell tased the plaintiff three or four times, all in drive-stun mode. Officer McGraw also tased the plaintiff one time, in prong mode. In response to Officer McGraw's tase, the plaintiff "threw my arms up again," at which point Officer Brassel tased him under

his arm in prong mode, causing the plaintiff to pass out and collapse.[8] Throughout this period, the plaintiff cooperated fully with the officers. (Doc. 14-1 at 6-9).

The defendants rely on a very different version of the facts. According to them, when Officer McGraw observed the plaintiff on his cell phone, he instructed Officer Powell to confiscate it. Officer Powell attempted to do so but, when he opened the patrol car door, the plaintiff without permission began to exit the vehicle and struggled with Officer Powell over the phone. Officer Powell ordered the plaintiff to get back in the patrol car but the plaintiff refused, his legs remaining outside and the plaintiff daring Officer Powell to break them. Officer Powell pushed the plaintiff back into the vehicle while Officer McGraw from the other side attempted to pull the plaintiff back inside. When this effort failed, Officer Brassel tased the plaintiff twice in drive-stun mode. Rather than becoming compliant, the plaintiff shoved Officer Brassel in the chest. Officer Brassel then tased the plaintiff in prong mode. (Doc. 14 at 4-6).

The officers assert that they did not employ unconstitutionally excessive force and that, even if they did, they are protected by qualified immunity. For purposes of evaluating the defendants' motion for summary judgment, of course, the Court must accept the plaintiff's version of events, not the defendants' version.[9]

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional

---

[8] *See generally Hoyt v. Crooks*, 672 F.3d 972, 975 n.4 (11th Cir. 2012) (describing the operation and physiological effects of the alternative modes of a Taser).

[9] The defendants recognize this principle, (Doc. 14 at 18), even though much of their argument ignores it.

conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

The plaintiff alleges that three on-duty city police officers employed excessive force in the course of arresting him. Such conduct plainly lies within the defendants' discretionary authority for purposes of qualified immunity analysis. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Because making an arrest is within the official responsibilities of a sheriff's deputy, [the defendant] was performing a discretionary function when he arrested [the plaintiff]," allegedly using excessive force in the process); *accord Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) ("[[I]t is clear that [a sheriff's deputy] was acting within the course and scope of his discretionary authority when he arrested [the plaintiff] and transported her to jail," during which he allegedly used excessive force). The plaintiff does not deny that the defendants have met their threshold burden. (Doc. 21 at 14). *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (where the plaintiff did not dispute that the deputy was acting within his discretionary authority at the time of arrest, the burden shifted to the plaintiff to overcome the qualified immunity defense).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "The salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To attain that level, "the right allegedly violated must be established, not as a broad general

proposition, … but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094. The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard*, 311 F.3d at 1350 (emphasis omitted). The requisite fair and clear notice can be given without case law only "[i]n some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003).

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351. "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*. "[I]f a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (internal quotes omitted). "[S]uch decisions are rare," and "broad principles of law are generally insufficient to clearly establish constitutional rights." *Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009).

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that

is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52.

When case law is utilized to show that the law was clearly established, the plaintiff must "point to law as interpreted by the Supreme Court [or] the Eleventh Circuit" that pre-dates the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Moreover, "[t]he law cannot be established by dicta[, which] is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n.13 (11th Cir. 1998) (internal quotes omitted).

Neither side suggests the first *Vinyard* standard applies here. The defendants deny the second *Vinyard* standard is in play because the test for excessive force employs a factor analysis that requires an examination of the "totality of the circumstances," followed by a "careful balancing" of interests under the relevant circumstances. (Doc. 14 at 19-20). And the defendants conclude the third *Vinyard* standard cannot be satisfied because the various Eleventh Circuit cases finding that the use of a Taser (or other nonlethal weapon such as pepper spray and chemicals) amounted to unconstitutionally excessive force do not involve "facts indistinguishable from the facts of this case." (*Id*. at 20-22).

As to the second *Vinyard* standard, the defendants overlook *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), and its statement that "[o]ur cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id*. at 1330 (citing *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002), and *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000)). Under this rule, "punch[ing] [a suspect] in the stomach [even a "single punch"] while he was handcuffed and not struggling or resisting … constituted excessive force," and neither past resistance nor future resistance constitutionalizes such a use of force at a time the suspect is not resisting. 526 F.3d at 1330-31.

The defendants are aware of *Hadley*, because the plaintiff relies on it. (Doc. 21 at 19). But the defendants brush *Hadley* aside on the grounds that the suspect there was handcuffed behind his back and not, as here, in front. (Doc. 23 at 7). This is an accurate description of *Hadley*'s facts[10] but, by its terms, *Hadley*'s holding extends to all non-resisting suspects, not just to those non-resisting suspects that have been handcuffed behind the back (or at all).

That *Hadley* cannot be limited to suspects handcuffed behind the back is demonstrated by how the Eleventh Circuit has employed it in other cases; both before and after the subject incident, the Eleventh Circuit has invoked *Hadley*'s holding when the suspect was not handcuffed at all. *Perez v. Suszczynski*, 809 F.3d 1213, 1217, 1219 (11th Cir. 2016); *Brown*, 608 F.3d at 738.

The defendants also overlook *Saunders v. Duke*, 766 F.3d 1262 (11th Cir. 2014), and its observation that "[w]e have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Id*. at 1265 (citing *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000); *Slicker v. Jackson*; and *Lee v. Ferraro*).[11] The suspect in *Priester* was not handcuffed. 208 F.3d at 923-24. As this Court has noted, "the Eleventh Circuit, in several cases …, has found the gratuitous use of force against non-resisting, unhandcuffed suspects to be unconstitutional …." *Rachel*, 112 F. Supp. 3d at 1284-85 (discussing *Priester* as well as *Reese v.*

---

[10] 526 F.3d at 1327.

[11] *Saunders* could not *create* clearly established law for purposes of this case, because it was decided four months after the conduct at issue herein. But *Saunders* could, and did, *articulate* the law that was already clearly established by the earlier cases on which it relied.

*Herbert*, 527 F.3d 1253 (11th Cir. 2008); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997); and *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002)).[12]

The Eleventh Circuit recently confirmed that *Hadley*, *Lee*, *Slicker* and *Priester* clearly established the law under *Vinyard*'s second, "obvious-clarity" standard. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1317, 1327-28 (11th Cir. 2017).[13] Thus, "no particularized preexisting case law was necessary" to strip the defendant of qualified immunity with respect to the force visited on the plaintiff in February 2009. *Id*. at 1306, 1328. In *Stephens*, all the force made the subject of the lawsuit was visited *before* the non-resisting plaintiff was handcuffed. *Id*. at 1308, 1322-23. The Court concludes that *Hadley* and the cases cited by it and *Saunders* clearly established, prior to May 2014, that a law enforcement officer violates the Fourth Amendment by gratuitously using force against a handcuffed, non-resisting suspect, including a suspect handcuffed in front. Because this proposition was clearly established under the "obvious clarity" standard, it is irrelevant whether any Supreme Court or Eleventh Circuit decision exists involving facts materially similar to those of this case.

However, even were this case to be decided under the third *Vinyard* standard, it was clearly established in May 2014, by fact-specific case law, that the defendants' conduct under the circumstances as depicted by the plaintiff's evidence violated the Fourth Amendment.

As a threshold matter, the defendants appear to invoke a standard higher than that articulated in *Vinyard*. Citing *Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009), the defendants assert that the law is clearly established under the third *Vinyard* standard only by case law involving "indistinguishable

---

[12] On appeal in *Rachel*, the Eleventh Circuit "substantially agree[d] with the district court's findings of fact and holdings of law." 633 Fed. Appx. at 784.

[13] The *Stephens* Court did not mention *Priester* by name, but it did expressly rely on the cases cited in *Saunders*. 852 F.3d at 1328. As noted in text, the cases cited in *Saunders* include *Priester*.

facts." (Doc. 14 at 19). While *Lewis* does include the quoted language, it cites only *Long v. Slaton*, 508 F.3d 576 (11th Cir. 2007), as support. 561 F.3d at 1292. *Long*, however, does not use the quoted language; instead, it employs the familiar "materially similar" language of *Vinyard* and many other cases. 508 F.3d at 584. As noted earlier, the *Vinyard* Court equates "materially similar" circumstances with "not fairly distinguishable" circumstances. 311 F.3d at 1352. To the uncertain extent the defendants suggest that *Lewis* read the qualifier "fairly" out of the standard and thereby created a higher standard than that of *Vinyard*, the "panel precedent rule" precludes such a result.[14]

In *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011), the plaintiff presented evidence that he turned around outside a nightclub to find a Taser drawn on him. He raised his hands and took a step backwards, at which point a defendant officer tased him in prong mode. When he did not fall down, another defendant officer tased him in prong mode, and the plaintiff fell to the ground, where the first officer tased him in drive-stun mode before handcuffing him. According to the plaintiff's evidence, he made no menacing gestures, ignored no order to disperse, and did not swing his arms or resist arrest in any manner throughout this episode. *Id.* at 1277, 1288.

The Eleventh Circuit held that, under the plaintiff's version of events, the defendants' conduct violated the Fourth Amendment. 647 F.3d at 1288. Citing *Vinyard* and *Lee*, the *Fils* Court stated that "these cases establish that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Id.* at 1289. And "[o]ther cases confirm that non-violent suspects, accused of minor crimes, who have not resisted arrest … are victims of constitutional abuse when

---

[14] "Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this court sitting *en banc*." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010); *accord Walker v. Jefferson County Board of Education*, 771 F.3d 748, 752 (11th Cir. 2014).

police used extreme force to subdue them." *Id*. (citing *Hadley* and *Priester*). While the use of a Taser "could be appropriate where an officer reasonably believes the suspect is violent" or "where a suspect appears hostile, belligerent, and uncooperative," *id*. at 1290 (internal quotes omitted), under the plaintiff's evidence he "was not violent[,] did not disobey orders[,] did not resist arrest[,] [a]nd he posed no risk to the Defendants or anyone else at the club. Therefore, [the defendants'] tasing violated [the plaintiff's] Fourth Amendment rights." *Id*.

*Fils* is not fairly distinguishable from this case. In both cases, according to the respective plaintiff's evidence, the defendants repeatedly tased a non-violent, non-resistant, non-disobedient, non-threatening citizen accused of a minor offense.[15] The only distinction is that the plaintiff in *Fils* was not handcuffed when he was tased, as was the plaintiff here, and that distinction weighs against the defendants.

The defendants' only effort to distinguish *Fils* is their assertion that the plaintiff here "had been involved in a physical assault that was observed by the officers." (Doc. 14 at 20-21). In fact, all the officers saw was the plaintiff getting ready to "shove" the drug dealer. (*Id*. at 2; Doc. 14-1 at 3; Doc. 14-3 at 5; Doc. 14-5 at 4). Moreover, the contemplated shove (not actual shove) of a citizen (not an officer) was separated by time and distance from the defendants' use of force and, as previously noted, *Hadley* established in 2008 that the Fourth Amendment is violated by punching a non-resisting defendant regardless of whether he previously resisted. 526 F.3d at 1330-31. The defendants' sole effort to distinguish *Fils* thus fails both factually and legally.

---

[15] The plaintiff in *Fils* was charged with disorderly conduct and resisting arrest without force. 647 F.3d at 1279. Both are misdemeanors, with the latter punishable by up to one year imprisonment. Fla. Stat. §§ 775.082(4)(a) and (b), 843.02, 877.03. The plaintiff here was charged with disorderly conduct and possession of marijuana for personal use, the latter likewise a misdemeanor punishable by up to one year imprisonment. Ala. Code §§ 13A-5-7(a)(1), -12-214(b).

The defendants insist that, even if the law was clearly established in May 2014 that tasing a non-resisting suspect was unconstitutional, the plaintiff was resisting arrest when force was applied. According to them, the plaintiff "engaged in a physical struggle with one of the officers over his cellular phone, threw his hands up in the air, and pushed another officer in the chest." (Doc. 23 at 9). The first and third of these alleged infractions are supported only by the defendants' evidence and are directly denied by the plaintiff in sworn testimony. (Doc. 14-1 at 7, 9). Accordingly, they cannot be considered on the instant motion.[16]

The only evidence cited by the parties regarding the plaintiff moving his upper appendages comes from the plaintiff himself and so can be considered on the defendants' motion. According to that evidence, the plaintiff "threw [his] hands up" after Officer Powell placed him in a chokehold and began tasing him. (Doc. 14-1 at 7). The plaintiff then "threw up [his] arms again" when Officer McGraw tased him. (*Id.* at 8).

The defendants do not quote this evidence, much less parse it, place it in context, or attempt to explain its import; instead, they simply assume that it describes a movement by the plaintiff that was (or reasonably appeared to be) threatening, justifying multiple tasings in response. It is not clear that the plaintiff's testimony will even bear that construction but, in any event, it is clear that a reasonable inference from his testimony is that his movement could not reasonably be viewed as threatening. As the Court is required to indulge all reasonable inferences in favor of the plaintiff, the defendants cannot obtain summary judgment based on this testimony.

The plaintiff testified that Officer Powell started tasing him even though "[m]y hands still like this in cuffs. So I threw them up. I opened them up, and he was just tasing me." (Doc. 14-1 at 7). The plaintiff did so to show witnesses that

---

[16] Similarly, the plaintiff denies the defendants' assertion that they commanded him to re-enter the patrol car and that he refused to comply. The defendants acknowledge that this conflict in the evidence prevents them from relying on the issuance and defiance of such a command on the instant motion. (Doc. 14 at 22).

he was being tased while handcuffed. (*Id*.). For all this evidence shows, the plaintiff – only after Officer Powell had tased him – simply raised his forearms to his chest, a decidedly non-threatening gesture. The plaintiff testified that he threw his arms up when Officer McGraw tased him "because I felt it." (*Id*. at 8). For all this evidence shows, the plaintiff's movement was nothing more than an involuntary physical reaction to being tased. Nor is there evidence of how far the plaintiff's arms moved, or to what position. Moreover, Officers Powell and McGraw had already completed their tasings of the plaintiff before this movement occurred, so it could not possibly justify their conduct.

Officers McGraw and Powell raise additional arguments. Relying on their own sparse testimony that they did not have or use a Taser, and on Officer Brassel's testimony that the police department issued only two Tasers – one to him and one to an investigator – Officers McGraw and Powell conclude that the plaintiff's testimony that they tased him must be ignored because it is "'blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law.'" (Doc. 14 at 7, 23 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

As *Feliciano* notes, a plaintiff's testimony is incredible as a matter of law only if "it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature," 707 F.3d at 1253, a standard plainly unattainable by the defendants here.[17] The defendants do not suggest that the plaintiff's testimony as to who tased him is blatantly inconsistent, and it obviously is not. And the "blatantly contradicted by the record" test is implicated only when some external, unbiased and unimpeachable source – such as a videotape – supplies a contradiction so incontestable that no reasonable jury could believe the opposing version. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). It does not apply

---

[17] Even were it undisputed that only one Taser was present at the scene, that alone could not render it impossible that each of the officers used it on the plaintiff.

to a mere swearing match between interested witnesses, which is all the defendants offer here. *Feliciano*, 707 F.3d at 1253 (the plaintiff's self-serving statements contradicting the testimony of the defendant officers were based on her personal knowledge and could not be disregarded on motion for summary judgment; "[t]he contradiction presents a classic swearing match, which is the stuff of which jury trials are made.").[18]

Finally, Officer Powell argues that his placing of the plaintiff in a chokehold is *de minimis* force that will not support an excessive force claim. (Doc. 14 at 24). The very cases on which he relies reflect that whether force was *de minimis* depends on whether the total force employed was *de minimis*, not on whether some selective subset of that force was *de minimis*. The Court will not construct or support an argument on Officer Powell's behalf.

In summary, given the plaintiff's version of events, it was clearly established in May 2014 that the force the defendant officers used against the plaintiff under the circumstances presented was unconstitutionally excessive. Accepting the plaintiff's version of events, a Fourth Amendment violation occurred for which the defendants have no qualified immunity. Accordingly, the officers are not entitled to summary judgment as to this claim.

### B. The City.

Count 7 alleges vaguely that the City "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of Camden, which caused a violation of [the plaintiff's] rights." (Doc.

---

[18] In their reply brief, the defendants cite *Skelly v. Okaloosa County Board of County Commissioners*, 415 Fed. Appx. 153 (11th Cir. 2011), for the proposition that a court need not accept "evidence that is directly discredited by the record." (Doc. 23 at 6 (emphasis omitted)). *Skelly*, like the instant case, involved only conflicting testimony about the use of, and need for, Tasers against a handcuffed arrestee, which the Court held could not justify refusing to credit the plaintiff's version of events in resolving the defendants' motion for summary judgment. *Id.* at 155. Like *Feliciano*, *Skelly* does not support the defendants' position but refutes it.

1-1 at 7). In his brief, the plaintiff limits this claim to one that the City displayed "deliberate indifference to the need for Taser training." As a result of the City's "failure to provide any training on the [City's Taser] policy," "the officers violated several of the Taser policies adopted by the City." (Doc. 21 at 25-26).

"A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom." *Lewis*, 561 F.3d at 1293. "Municipal policy or custom may include a failure to provide adequate training if the deficiency evidences a deliberate indifference to the rights of its inhabitants." *Id*. (internal quotes omitted). "To establish a city's deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id*. (internal quotes omitted). "A city may be put on notice in two ways. First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Id*. "Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." *Id*.

The defendants pointed out in their principal brief the absence of any prior incidents of unconstitutionally excessive force. (Doc. 14 at 16). The plaintiff does not disagree. Instead, he argues that the City "obviously knew of the unusually high risk of injury from the improper use of Tasers" and also "knew that a police officer untrained on the proper deployment of a Taser would probably violate a person's constitutional rights." (Doc. 21 at 25).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotes omitted). The Supreme Court has offered only one example of adequate notice absent a history of constitutional violations: supplying officers with firearms, knowing

they will almost certainly be called on to arrest fleeing felons, without training them in the constitutional limitations on the use of deadly force. *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989). The example is dictum. *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998). Indeed, it is "hypothetical" only; *Canton* merely "left open the possibility" that, "in a narrow range of circumstances," a pattern of past violations might not be needed. *Connick*, 563 U.S. at 63 (internal quotes omitted). The *Canton* Court simply "sought not to foreclose the possibility, *however rare*, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id*. at 64 (emphasis added).

It appears that neither the Supreme Court nor the Eleventh Circuit has ever found an appropriate use for *Canton*'s narrow, rare, hypothetical exception to the pattern-of-constitutional-violations requirement. In *Lewis*, the Court held that the need for training on the proper use of hobble restraints and the proper placement of officers' weight on an arrestee's back while hogtying him was insufficiently obvious to obviate a history of constitutional violations. 561 F.3d at 1290, 1293. In *Gold*, the Court similarly ruled that the need for training regarding a disorderly conduct statute and the proper response to handcuff complaints fell "far short" of implicating the *Canton* exception. 151 F.3d at 1352 (internal quotes omitted). The plaintiff identifies no case employing the *Canton* exception in the context of Tasers.

The Eleventh Circuit has characterized the use of a Taser in prong mode as "nonlethal" force. *Smith v. LePage*, 834 F.3d 1285, 1290 n.2, 1295 (11th Cir. 2016); *accord Fils*, 647 F.3d at 1276 n.2 ("A 'taser' [in prong mode] is a non-deadly weapon …."). A Taser is thus fundamentally different than the firearms described in the *Canton* Court's hypothetical, which are specifically designed to deliver deadly force with every pull of the trigger – a uniquely dangerous item in a

law enforcement officer's toolbox.[19]  Moreover, the *Canton* hypothetical involves a situation where the line between permissible and impermissible deadly force cannot be intuited;[20] notably, the Supreme Court did not suggest that no history of constitutional violations is necessary to make it obvious that a city needs to train its officers not to execute restrained, compliant arrestees.[21]  Thus, *Canton* offers no support for the suggestion that, even without a single historical Fourth Amendment violation, a city can be held liable under Section 1983 for failing to train its officers not to tase for no reason a handcuffed, non-resistant, non-threatening misdemeanant.

It is unnecessary to consider further what situations might possibly fall within *Canton*'s hypothetical exception to the requirement of historical constitutional violations.  It is enough to conclude, as the Court does, that this case falls far outside its ambit.  Accordingly, the City is entitled to summary judgment as to this claim.

---

[19] A Taser, like any device employed by law enforcement, is capable of causing death in extreme situations.  *See, e.g., Oliver v. Fiorino*, 586 F.3d 898, 901, 906 (11th Cir. 2009) (citizen died after being tased eight times in prong mode in the span of two minutes).  However, unlike a firearm, it is neither designed to cause death nor commonly used for that purpose.

[20] While an officer "may not seize an unarmed, nondangerous suspect by shooting him dead," if the suspect "threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

[21] This silence is consistent with the Eleventh Circuit's recognition that, "[w]here the proper response … is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11th Cir. 1997) (internal quotes omitted).

## II. State Claims.

### A. Officers.

The defendants do not deny that, under the plaintiff's version of the facts, he can satisfy all the elements of a typical assault and battery. (Doc. 14 at 27). They note, however, that "[a] peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order … [t]o make an arrest for a misdemeanor …." Ala. Code § 13A-3-27(a)(1). Section 13A-3-27 is part of the criminal code and is included in a chapter setting forth "defenses," which might suggest it is applicable only as a defense to a criminal prosecution. The defendants, however, note that the Alabama Supreme Court has cited the provision in a civil action for assault and battery for the proposition that, "[i]n making an arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995).

As discussed in Part I.A.2, under the plaintiff's version of the facts no force was necessary, and the defendant officers could not reasonably have believed that the force they employed was necessary. The defendants concede that "[t]he issue is identical to the issue raised by Plaintiff's § 1983 claim alleging an excessive use of force." (Doc. 14 at 27 (citing *Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010)). Having lost their motion as to the Fourth Amendment excessive force claim, they can fare no better as to the assault and battery claim.

> Every peace officer … who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, … and whose duties include the enforcement of … the criminal laws of this state, and who is empowered by the laws of this state … to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope

of his or her law enforcement duties.

Ala. Code § 6-5-338(a). "[W]hether a qualified police officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)." *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (internal quotes omitted). The defendants invoke Section 6-5-338(a) and state-agent immunity. (Doc. 14 at 28-29).

"A State agent asserting State-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (internal quotes omitted). "Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable." *Id*. The two *Cranman* exceptions are as follows:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

792 So. 2d at 405.

The plaintiff does not dispute that the defendant officers have carried their initial burden. (Doc. 21 at 26). The plaintiff does not rely on the first *Cranman* exception, but he does invoke malice, willfulness and bad faith. (*Id*. at 26-27).

"As this Court has previously noted, for purposes of the immunity issue, 'willful,' 'malicious' and 'bad faith' all require evidence that the defendant acted with the intent to injure or with ill will towards the plaintiff." *Rachel*, 112 F. Supp. 3d at 1296 (internal quotes omitted). "Force applied 'intentionally, gratuitously, and in violation of [a plaintiff's] clearly established constitutional rights … support[s] an inference that [the defendant] acted willfully and in bad faith.'" *Id*. (quoting *Brown*, 608 F.3d at 742). The plaintiff expressly relies on

this portion of *Brown*, (Doc. 21 at 27), and the defendants in their reply make no effort to extricate themselves from its reach. Because, under the plaintiff's evidence, the defendant officers applied force intentionally, gratuitously and in violation of the plaintiff's clearly established constitutional rights, a jury must decide the question of state-law immunity.

### B.  The City.[22]

The defendants argue there is no cognizable claim against a municipality for negligent training or supervision but that, even if there is, the City benefits from the peace officer immunity of its chief of police. (Doc. 14 at 25-27). Because it is dispositive, the Court addresses only the first argument.[23]

As Judge Butler explained in 2001, by statute a city can be liable only for the neglect, carelessness or unskillfulness of its agent, officer or employee. Such liability is based on *respondeat superior*, which requires that the employee first be liable for a tort. In a case such as this, "the plaintiffs must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001). After analyzing Alabama law, Judge Butler concluded that the state "recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate." *Id*. at 1315.[24]  Federal judges

---

[22] As with the plaintiff's search-and-seizure claim, the defendants proclaim victory by default on the grounds the plaintiff did not respond to their briefing. (Doc. 23 at 4). As addressed in note 4, *supra*, the Court does not subscribe to the defendants' "abandonment" theory.

[23] There are substantial evidentiary holes in the defendants' treatment of the immunity issue, including their failure to address the assistant chief of police, whom they acknowledge shared responsibility for Taser training. (Doc. 14-6 at 7).

[24] In summary, Judge Butler determined that the tort of negligent training or supervision requires that the tortfeasor be the master of the plaintiff; that a master is restricted to one essentially in the position of an employer; and that a non-employer supervisor is not the master of another's employee. 169 F. Supp. 2d at 1315.

throughout Alabama, including the undersigned,[25] have agreed with Judge Butler.[26]  The plaintiff in his silence offers the Court no reason to alter its previous conclusion.[27]  Accordingly, the City is entitled to summary judgment as to this claim.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** as to all claims against the City; is **granted** as to any claim

---

[25] *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1310-11 (S.D. Ala. 2011) ("The insuperable legal defect in such a claim [for negligent hiring or training] is that Alabama courts do not recognize that cause of action against a supervisor or, in turn, a municipality.").

[26] *E.g., Barr v. Jefferson County Barber Commission*, ___ F. Supp. ___, 2017 WL 1488138 at *10-11 (N.D. Ala. 2017) (Hopkins, J.); *Black v. City of Mobile*, 963 F. Supp. 2d 1288, 1308 (S.D. Ala. 2013) (Granade, J.); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1057-58 (S.D. Ala. 2007) (DuBose, J.); *Lucio v. City of Tarrant*, 2015 WL 4389974 at *5 (N.D. Ala. 2015) (Proctor, J.); *K.D. ex rel. J.D. v. Wooten*, 2015 WL 1138492 at *13 (N.D. Ala. 2015) (Bowdre, C.J.); *Wright v. City of Ozark*, 2014 WL 1765925 at *8 (M.D. Ala. 2014) (Fuller, J.); *Norman v. Norman*, 2013 WL 1767800 at *3-4 (N.D. Ala. 2013) (Johnson, J.); *Bell v. City of York*, 2013 WL 1352022 at *29 (N.D. Ala. 2013) (Blackburn, C.J.); *Cheatham v. City of Tallasee*, 2012 WL 3890127 at *13 (M.D. Ala. 2012) (Albritton, J.); *Crutcher v. Vickers*, 2012 WL 3860557 at *13-14 (N.D. Ala. 2012) (Smith, J.); *cf. Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258-59 (M.D. Ala. 2010) (Watkins, J.) (plaintiff failed to identify any authority "from any state or federal court contradicting or rejecting the finding in *Ott*").

[27] Several fellow judges have concluded that a 2012 decision indicates the Alabama Supreme Court does or might recognize a claim against a non-employer supervisor for negligent training or supervision.  *See Tillis v. Blanks*, 2017 WL 89570 at *17 (S.D. Ala. 2017); *Godsey v. City of Huntsville*, 2014 WL 6685408 at *12 (N.D. Ala. 2014); *Thomas v. Moody*, 2014 WL 2219273 at *4 (M.D. Ala. 2014); *Hughes v. City of Montgomery*, 2013 WL 5945078 at *2 (M.D. Ala. 2013).  The Court cannot agree.  *In Ex parte City of Montgomery*, 99 So. 3d 282 (Ala. 2012), the defendant municipality did not argue that Alabama law recognizes no cause of action against a non-employer supervisor for negligent training or supervision; its only argument was that the supervisor's immunity under Section 6-5-338(a) shielded the city as well.  *Id.* at 299.  The Supreme Court's rejection of the defendant's articulated argument (because the defendant failed to identify the relevant supervisor or to demonstrate the supervisor's entitlement to immunity) cannot fairly be read as a *sub silentio* rejection of an argument never raised or addressed.

against the defendant officers under the Fifth, Eighth or Fourteenth Amendments; and is **granted** as to the plaintiff's Fourth Amendment claim against the defendant officers for unreasonable search and/or seizure. All such claims are **dismissed with prejudice**. In all other respects, the motion for summary judgment is **denied**.

DONE and ORDERED this 5th day of June, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE